POWERS (LANSTRAAZ v.). See Case No. 8,078.

## Case No. 11,362.

### POWERS v. MORTEE et al.

[4 Am. Law Reg. 427.]

Circuit Court, E. D. Louisiana. 1855.

GUARDIAN AND WARD — AUTHORITY TO TAKE MINOR'S PROPERTY IN ANOTHER JURISDICTION —DOMICIL OF MINOR.

1. Where a resident in Louisiana died intestate, leaving two minor children surviving him,

who had been placed, in the father's lifetime, in the care of an uncle in the state of New York, and he having, after the father's death, been duly appointed their guardian there, an application made in Louisiana by the uncle to set aside proceedings in that state appointing the grandmother tutrix will be refused; neither will the court decree a sum of money to be paid to the New York guardian for the support and education of the children.

2. Authority conferred on a guardian in New York can give him no right to come into Louisiana, and take the minor's property there, which is already in the possession of a legal tutrix.

3. The rights and duties of guardians are strictly local.

4. The domicil of the minor must follow the domicil of the father.

[This was a proceeding by Charles Powers, guardian of the children of James Brown, Jr., deceased, against Anna Olivia Mortee and Thomas J. Mortee, her husband, to set aside proceedings of the Eighth district court of Louisiana appointing defendants tutrix and co-tutor of the minors, as illegal, and therefore null and void, and seeking to recover as much of the property of James Brown, Jr., as belongs to the children.]

McCALEB, District Judge. The late James Brown, Jr., who was for many years a citizen of this state, and a resident of the parish of St. Tammany, departed this life on the 16th of September, 1853. He died intestate, leaving two children, viz: Adelaide Clare, aged ten years, and Emma Eliza, aged eight years, who were the only children born of his marriage with his first wife, Eliza Hosmer. He also left as widow in community Rosa Ginault, his second wife, who was pregnant at the time of his death, and who has since been delivered of a female child, named Louisa Laura. The first wife of Brown died several years before her husband. After her death, her surviving children were committed by their father to the care of their grandmother, Mrs. Mortee, one of the defendants in this action. They remained under her charge for seven or eight years, and were then taken to New York, and placed by their father under the care of the plaintiff, Charles Powers and his wife (the latter being the sister of the said James Brown), where they now remain. Since the death of the father, their grandmother, Mrs. Mortee, has demanded the possession of the children; but the plaintiff refuses to comply with the demand, upon the ground that it was the wish and request of their father that they should remain under the care and protection of himself and wife. He alleges "that after the decease of the father, at the request of the grandfather and uncle and aunt of the said children, he applied to the surrogate's court, in the state of New York, and was legally appointed the guardian of the said children, who now reside with him and his wife in that state, and are supported and educated out of their own funds. The relatives at whose request this proceeding was resorted to, are the paternal grandfather, uncle and aunt of the children. The letters of guardianship were granted by the surrogate of Richmond county, in the state of New York, on the 16th of January, 1854. Immediately after the death of James Brown, Jr., his succession was opened in the parish of St. Tammany, and an administrator appointed. The defendant, Mrs. Mortee, being the grandmother of the minor children. and the only ascendant residing in the state of Louisiana, was by law entitled to the tutorship, and was, by an order of the Eighth district court, appointed tutrix on the 29th of November, 1853. Her husband, by the same authority, was appointed co-tutor. They both aver that they have complied with all the requisites of the law, and have given bond and security to the satisfaction of a meeting of the friends of the family of the minors, in a sum sufficient to cover their interest in their father's estate, as well as the property they inherited from their mother. They further aver that they have thus been legally appointed to the tutorship of the said minors, and are now in the discharge of their duty in that capacity. They deny that the plaintiff, Powers, has any right to control or interfere with the persons or property of the said minors in any manner.

The avowed object of this action, as appears from the plaintiff's petition, is to set aside the proceedings of the Eighth district court, appointing the defendants tutrix and co-tutor of the minors, as illegal, null, and void, and to recover possession of the property belonging to the succession of James Brown, Jr., or as much thereof as legally belongs to these two children. In the event of a refusal on the part of this court to grant to the plaintiff the possession of the property, he prays that the court will award a sum of money to be paid to him, from time to time, for the support and education of the children. We have seen that the father died intestate; that, although he placed the children under the care of his brother-in-law and sister in New York, there is nothing to show that he ever intended to remove to that state, and fix his permanent residence there; nor does it appear that it was his wish that the children should reside there for any other purpose than to obtain an education. The correspondence introduced in evidence, certainly exhibits great solicitude on his part, that his children should continue to remain under the care of his sister. But as this solicitude was only expressed in reference to their education, and evidently did not relate to their permanent residence, either during his own life, or in the event of his death, it is impossible to say that any change of domicil was ever contemplated. It is clear, in point of fact, that the domicil of the father was in Louisiana; and it is equally clear, in point of law, that the appointment of a tutor or curator to a minor, belongs to the judge of probates of the place of domicil, or usual residence of the father and mother of such minor, if they or either

of them be living. If the father and mother be dead, the appointment shall be made by the judge of probates, at their last place of domicil; or, if they had no domicil, of the minor's nearest relations. The place of birth of a person is considered as his domicil, if it is at the time of his birth the domicil of his parents, "patris originem unusquisque sequitur." The domicil of birth of minors continues until they have obtained a new domicil. Minors are generally deemed incapable of changing their domicil during their minority, and therefore they retain the domicil of their parents; and if the parents change their domicil, that of the children follows it; and if the father dies, his last domicil is that of the infant children. Dig. lib. 50, tit. 1, l. 3, 4; Story, Confl. Laws, 44. It is wholly inconsistent with our law, that any one not resident in the state should be appointed a tutor to a minor whose domicil is within the state, and whose interests or property may be here situated. Civ. Code, art. 351; 5 Mart. (N. S.) 382. And it is quite unnecessary, therefore, to discuss the claims of the plaintiff, or of any other relative or connection of these minors residing in New York, to be appointed their tutor; nor is it necessary, for the purposes of a correct decision of this case, to inquire into the legality of the appointment of the plaintiff as guardian, by the surrogate of Richmond county, New York. The question for this court simply is, can the authority thus conferred upon the plaintiff, as guardian of these minors in the state of New York, give him a right to come into this state, and take the property already in the possession of a tutrix appointed at the place where that property is situated, and administer it for the benefit of those minors? It is clear to my mind that he has no such right. He could not by the laws of Louisiana claim the tutorship of these minors at all, and for the simple reason that he does not reside within the state where the minors have their legal domicil, and where their property is situated; and even if he were a resident of the state, his claims would not, under our law, be preferred to those of their grandmother. I am called upon to decide a question involving the right to the possession of property, according to the law of Louisiana, and not according to that of New York. Whatever may be the rights the appointment of guardian would confer in the latter state, it is clear that it confers no extra-territorial authority to perform acts directly opposed to the whole policy of our own laws; for who can doubt that it would be at war with the express provisions of our Code, to permit a guardian residing in the state of New York to assume the administration of minors' property in Louisiana; our own legislature has prescribed rules and regulations upon this subject. It has thought proper to say how and by whom such property shall be administered; and it is sufficient to say that the plaintiff has not shown that he is within the requirements of the law.

It is well established in our jurisprudence, that when the father and mother of the minor are dead, the grandfather is entitled of right and by law, to the tutorship of the minor; and no supposed aversion of the minor towards him, can deprive him of it, that it may be given to a brother of the deceased. It is equally well established that when no tutor has been appointed by will, it is the duty of the judge of the court of probates, to give the tutorship to the nearest ascendant of the minor. 10 La. 541, 542. In such a case, where both parents are dead, the grandfather is entitled to letters of tutorship; and it is unnecessary to call a family meeting to authorize or sanction his appointment. Civ. Code, art. 281. In the case now before the court, it is unnecessary to consider the claims of the grandfather, inasmuch as it is not shown that either paternal or maternal grandfather has asserted any claims to the tutorship. The latter is dead, and the former is a resident of the state of New York, and could not for the reasons already adduced, from Louisiana law, receive the appointment of tutor even if he had demanded it. Under such circumstances, the grandmother, being the nearest ascendant in the direct line of the minor, residing within the state, and where the property is situated, had a clear right to claim the tutorship by the effect of the law. Id. arts. 281, 284.

It is impossible to perceive upon what solid grounds the claims of the plaintiff in this case can rest. The rights and powers of guardians are considered as strictly local, and not as entitling them to exercise any authority over the person or personal property of their wards in other states, upon the same general reasoning and policy which have circumscribed the rights and authorities of executors and administrators. Morrell v. Dickey, 1 Johns. Ch. 153; Story, Confl. Laws, § 499. To authorize the plaintiff to take charge of the property of these minors, whether to administer it within this state, or to sell it and remove it beyond the reach of the lex rei sitæ, some higher powers than those which are necessarily incidental to his appointment of guardian, under the laws of New York, should be exhibited. If the legal domicil of these minors was in New York, there would perhaps be some ground for the claims he has asserted before the court; but we have seen that there has been no change of domicil since the death of the father, for the reason that it is not in the power of the children, during their minority, to make such a change. We have also seen that the person designated by our laws as entitled to the tutorship, has actually been appointed; and our Code expressly declares that the domicil of a minor not emancipated, is that of his father, mother, or tutor.

But the plaintiff contends that no tutrix has been legally appointed; that the powers exercised by the clerk, as they appear from the mortuary proceedings in the court having

charge of the settlement of the succession of James Brown, Jr., were illegal and unconstitutional. Let us admit for a moment that this position were strictly correct—in what possible mode would the alleged irregularities operate in favor of the plaintiff? Let us suppose that Mrs. Mortee were now deprived of her tutorship, would he, under any circumstances, be entitled to demand of this court an order to put him in her place? From the view we have already taken of the law of this case, it is clear that the statement of the question would necessarily call for a negative reply.

Here I might with propriety leave the case; but my respect for the argument of the counsel for the plaintiff, has induced me to examine the act of the legislature of Louisiana, approved April 30th, 1853, entitled "An act to prescribe the powers and duties of clerks of courts, the parish of Orleans excepted." The seventy-sixth article of the constitution of Louisiana declares that "the legislature shall have power to vest in clerks of courts authority to grant such orders and do such acts as may be deemed necessary for the furtherance of the administration of justice; and in all cases the powers thus granted shall be specified and determined." Among the powers specified and determined in the act above referred to, we find the power to administer oaths in all cases; to grant orders for affixing seals, taking inventories, and making petitions, and to order the execution of wills; to confirm testamentary executors; to confirm and appoint tutors and under-tutors; to order family meetings, and homologate their proceedings, if no opposition is made thereto; to grant orders for the sale of succession property, &c. The powers here granted by the legislature were sufficiently ample to authorize the acts of the clerk of the Eighth district court, in reference to the appointment of the tutrix; and so far from the legislature having transcended its constitutional authority, it seems to have possessed full power over the subject, in virtue of the constitution itself. The whole policy of the law is apparent. It is to prevent delays in the settlement of successions: to facilitate the ordinary proceedings for that purpose, in the absence of the judge, who is compelled to hold court in the different parishes composing his district, and who cannot, therefore, be present at the various places where the courts are held, to grant such orders as are indispensably necessary for the speedy and proper administration of justice. If the clerk should commit errors and irregularities, in the exercise of the powers specifically conferred by law, the parties aggrieved have their remedy by an opposition, which would bring the errors complained of before the judge for revision.

A full consideration of the merits of this case, has led me to the conclusion that the plaintiff is not entitled to the relief he seeks at the hands of this court, and that his petition must be dismissed with costs. A judgment of dismissal must be entered accordingly.