## WARREN v. HOFER.

The domicil of the parents at their death, is the domicil of their infant heir, and he cannot change that domicil of his own volition.

The distribution of personal property descending to such infant, wherever situated, must be governed by the law of that domicil, and the property should be remitted there for that purpose; and the Court there is under no obligation to remit funds to another state for the education and maintenance of the infant.

Hence, that domicil is the proper place for the residence and education of the infant, and a Court of another state may direct him to be delivered up to be taken to that place by the proper guardian; and although the power of a guardian is local to the state in which he receives his appointment, yet he is competent to receive the property or the custody of the ward when placed in his hands by such Court, to be taken to the state where both belong.

But such guardian, to entitle him to receive the property or the custody of the ward, must make proof of his guardianship.

The Court must use a sound discretion in making orders in such cases.

APPEAL from the *Lawrence* Circuit Court.

*Thursday, December* 1.

PERKINS, J.—On the 13th day of *September*, 1858, *Wesley Hofer*, by his attorney, filed in the clerk's office of the *Lawrence* Circuit Court, a complaint reading as follows:

"*Wesley Hofer* complains and shows to the Court that he is the legally appointed guardian of the person and estate of *William Thomas Walker*, a minor; that the said *William Thomas* is the son and only heir at law of *John K. Walker* and *Dorcas Walker*, both of whom are now dead; that said *John K.* and *Dorcas* died in *LaRue* county, *Kentucky*, the place of their residence, and that afterwards, by the proper Court of said county, letters of guardianship over the person and estate of said infant, were issued to plaintiff.

"The plaintiff further shows that soon after the death

of the mother, who survived the father of said *William Thomas*, one *Zachariah L. Warren*, without the consent of the friends of *William Thomas*, caused him to be removed to the county of *Lawrence*, state of *Indiana*, where he now detains him under pretext of a guardianship conferred by a Court in *Indiana*, and refuses to permit him to return to *Kentucky* with the plaintiff.

" Plaintiff further shows that he is the uncle as well as the legal guardian of said *William Thomas*.

" Plaintiff further shows that there is no estate belonging to said *William Thomas* in *Indiana*, while there is a respectable estate, which he inherits from his parents, in *La-Rue* county, *Kentucky;* and that there, also, dwell the larger portion of his friends. In consideration of the premises, plaintiff prays that said *Warren* may be required to produce the body of said *William Thomas* before this Court, and that the Court will direct that he be delivered to this plaintiff, to be taken to his home in *Kentucky*.

[Signed]        " *Wesley Hofer*."

The complaint is sworn to.

No copy of letters of guardianship appears to have been filed.

A writ of *habeas corpus* was issued, and the infant brought, in obedience to it, before the Court, with the following return thereto by *Warren*, showing the cause of the infant's detention:

" *Zachariah L. Warren*, the defendant hereto, for return to the writ of *habeas corpus*, says, that he has the said *William T. Walker* under his control, and residing in his family, and that he now here produces him in Court. He admits that said *William* is the son of *John K.* and *Dorcas Walker*, deceased, who both resided in the state of *Kentucky*, where they died, and that neither of them ever resided in *Indiana*. But he states that said *William Thomas* is the nephew of his, said *Warren's* wife, and that it was the wish of the mother of *William Thomas*, that his said aunt should take him and take care of him after her death; that it was in fulfillment of that wish, that the grandmother of said *William Thomas* brought him to the house of

said *Warren*, in *Indiana*, and that he, said *Warren*, has since kept him as a member of his family till he is now about twelve years old; and he avers that said *William Thomas* still desires to remain with defendant.

"The defendant further states that he has taken out, from the proper Court in *Indiana*, letters of guardianship over the person of said infant, and he denies that the plaintiff has taken out letters, as he alleges, in *Kentucky*. A copy of the letters of the defendant is filed with the return.

Signed and sworn to by    *Zachariah L. Warren.*"

Exceptions were filed to this return, for insufficiency; they were sustained, and the infant was ordered into the custody of the plaintiff, *Hofer*. Was this ruling correct?

The domicil of the parents of *William Thomas Walker*, at their death, was in *LaRue* county, *Kentucky*. Such being the case, that place was also the domicil of their infant son and heir. The infant could not, of his own volition, change that domicil, and we think it is not shown to have been changed. *Hiestand* v. *Kuns*, 8 Blackf. 345.

The distribution of the personal property, therefore, descended from the parents to the infant, no matter where situated, must be governed by the law of *Kentucky*, and the property should be remitted there for that purpose. *McClerry* v. *Matson*, 2 Ind. R. 79. The funds belonging to the infant being in *Kentucky*, the place of domicil, the Courts of that state would be under no obligation to remit any portion of them to this, for the education or necessary maintenance of the infant. For these and other reasons, it would seem, other things being equal, that the place of domicil was the proper one for the residence and education of the child. And there is no doubt about the power of the Court to direct the infant to be delivered up to be taken to that place by the proper guardian. Though the power of a guardian, like an administrator, is local to the state in which he receives his appointment; yet, he is competent to receive the property, or the custody of the ward, when placed in his hands by the Courts of another state, to be taken to the state where either or both belong, and in which he received his appointment. *McClerry* v.

*Matson, supra.*—*Hope* v. *Hope*, 27 Eng. Law and Eq. 249.
—*Dawson* v. *Jay, id.* 451.—*Powers* v. *Mortee*, 4 Am. Law
Reg. 427.—*In re Dawson, id.* 241.

But in this case there does not appear to have been any
proof that the plaintiff was the guardian of the infant,
*William Thomas.* Without such proof, we think the
Court should not have awarded him the custody of the
infant. A wise care and discretion should be exercised in
the making of an order that might be of such vast conse-
quence in its bearing upon the future welfare of the sub-
ject of it.

*Per Curiam.*—The judgment is reversed with costs.
Cause remanded, &c.

*J. Boker*, for the appellant (1).

*J. Collins*, for the appellee (2).

(1) No brief for the appellant reached the Reporter.

(2) Extract from the argument of Mr. *Collins.*

The principal, and perhaps only, point in this cause, is presented by the con-
flict of jurisdiction as to the appointment of guardian.

For the appellee we take the position—

1. That the domicil of the parent at the time of his death, continues the
domicil of the child until it acquires its full age; and

2. That the domicil of the minor is the jurisdiction for the guardianship of
his person and estates.

Upon the first point, see 1 Binney, 349 to 355—"The domicil of origin
arises from birth and connection. A minor during pupilage cannot acquire a
domicil of his own. His domicil, therefore, follows that of his father, and re-
mains until he acquires another, which he cannot do until he becomes a per-
son *sui juris.* Am. Lead. Cases, 725.—*Powers* v. *Mortee, United States* Cir-
cuit Court for the Eastern District of *Louisiana,* reported in the Am. Law Reg.,
*May,* 1856, vol. 4, No. 7.—8 Blackf. 345.

In the *Louisiana* case, Judge McCALEB, holds the following language: "It
is clear, in point of fact, that the domicil of the father was in *Louisiana;* and
it is equally clear, in point of law, that the appointment of tutor or curator to
a minor belongs to the judge of probates of the place of domicil or usual resi-
dence of the father and mother of such minor, if they, or either of them, be
living. If the father and mother be dead, the appointment shall be made by
the judge of probates at their last place of domicil, or, if they had no domicil,
of the minor's nearest relations. The place of the birth of a person is consid-
ered as his domicil, if it is, at the time of his birth, the domicil of the parents.
The domicil of birth of minors continues until they have obtained a new dom-
icil." * * "We have seen that there has been no change of domicil since
the death of the father, for the reason that it is not in the power of the chil-
dren, during their minority, to make such change."

Nov. Term,
1859.

THE MICHI-
GAN, &c.,
RAILRO'D Co.
v.
SHANNON.

These questions are reviewed with learning and ability, by Mr. Surrogate *Bradford* of *New York.* See Am. Law Reg., vol. 4, No. 4, *February*, 1856, *ex parte Dawson.* "In the case of a minor born in the city of *New York*, of a father there resident, a naturalized citizen, and a mother there resident, a native citizen, the residence of the parents there continuing until their decease, the place of birth and the domicil of the parents made *New York* the place of the domicil of the child." "The domicil of origin can be changed only by choice, and a domicil of choice cannot be acquired by the act of the minor, or of any other person except the parent or the guardian." Reported in 3 Bradford's Surrogate R.

It has been suggested that the statute of the state of *Indiana* securing a residence to minors, where parents shall have no residence within this state, and who, themselves, shall have resided one whole year, without interruption, in any county in this state, and who shall have thereby gained a settlement in such county, secures to this child a residence within the state, independent of the rights of the jurisdiction of the domicil of origin. 1 R. S. pp. 401, 402, § 5.

It is submitted that this enactment has no bearing whatever on the questions here discussed. In the first place, this child is not in the category contemplated by § 5, as "being poor, and standing in need of relief," for he has a fortune in *Kentucky*, where it is the desire of his uncle to take him and have him educated with his kindred.

The principle here contended for is fully recognized by the second paragraph of § 5 of said act—"Legitimate children shall follow and have the settlement of their father."