LEONARD *v.* PUTNAM.

The primary probate jurisdiction of everything pertaining to the settlement of estates is exclusively in the place of the domicile of the deceased.

The rights and powers of guardians are considered as strictly local, and as not entitling them to exercise any authority over the person or personal property of their wards in other States.

ASSUMPSIT, by Henry Leonard, by his guardian, George W. Fisher, against George F. Putnam, administrator of the estate of Henry B. Leonard, for money had and received, brought to recover a sum of money in the hands of the defendant as administrator of the estate of said Henry B. Leonard, late of Haverhill, in said county, deceased, by the appointment of the judge of probate for said county of Grafton, by Henry Leonard, a minor son of said Henry B. Leonard, who sues this action by said Fisher (who resides in the State of New York, and has been appointed guardian of said minor by the court of probate for the county of Franklin, in the State of New York, where the plaintiff also resides, and is still such guardian) as his guardian.

It was admitted that said Fisher, as such guardian, demanded said money of the defendant before the commencement of this suit, and that the plaintiff is entitled to recover, if, upon the foregoing facts, said guardian, so appointed, is legally entitled to demand and receive for and in behalf of the plaintiff said money of the defendant.

It was agreed that the questions of law arising upon the foregoing case be reserved for the whole court.

*H. & G. A. Bingham*, for the plaintiff.

This is an amicable suit in which the parties seek the direction of the court in what would seem to be a proper case for them to ask such direction.

The defendant, as administrator, has funds belonging to the plaintiff (who is a minor), in reference to which all matters have been adjusted preparatory for final payment to the plaintiff. There is no question about the right of the plaintiff to the funds. The only question is as to how and in what way the administrator may discharge his trust properly, and as to what orders or decrees (if any) it may be proper for the probate court to make in the premises. The plaintiff and his guardian both reside in New York, and the guardian has been duly appointed in that State, and has all the authority over the person and estate of the ward which the laws of the State of New York can confer upon him.

Upon these facts the inquiry is, Can the administrator properly pay over the funds to the guardian, and might the probate court here, in

its discretion, properly order him so to do? or, is there some rigid rule of the law which forbids the administrator and the probate court from such action, however safe and proper they might deem it to be?

It seems to us that it is eminently proper and right that this money should be paid to the plaintiff's guardian:

1st. Because the plaintiff's residence is in New York, and those persons directly interested in his welfare also reside there; and for them to come here, where they are strangers, and take guardianship here, and procure the necessary bonds here, would be inconvenient, if not impossible, however responsible they may be in fact.

2d. Because the plaintiff has been duly put under guardianship, as it respects his person and estate, in the State of his residence, and "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State." U. S. Const., art. 4, sec. 1.

3d. Because the funds in question are personal estate and not immovable property, and, the assertion of authority over them by a foreign guardian does not interfere with any local right or law. Story's Conflict of Laws, secs. 503, 504, 510; *Heydock's Appeal*, 7 N. H. 496.

4th. Because this case is within the reason of the case of an ancillary administrator, when he is found with a balance in his hands, after a final settlement, in the court from whence he received his appointment. In such a case, it is the duty of the ancillary administrator to pay over the balance in his hands to the principal administrator in the foreign jurisdiction. Story's Conflict of Laws, sec. 513; *Heydock's Appeal*, before cited; *Goodall* v. *Marshall*, 11 N. H. 88.

In conclusion, we submit that the administrator may safely pay over to the guardian, and that the probate court, if not in duty bound to order him to do so, can certainly in its discretion order him to do so with the most perfect propriety.

*Putnam* and *Felton*, for the defendant.

As to the plaintiff's second position, founded upon the constitution of the United States, we say, that although full faith and credit are to be given in each State to the public acts, records, and judicial proceedings of every other State, yet the statutes, judgments, decrees, and appointments of one State have no force as such in any other State, and can not be executed nor give authority to act there. An act, lawfully done in the State of New York, by an officer appointed under the laws of that State, may affect the rights of parties here, but the same acts done here could have no binding or legal effect whatever. See *Thompson* v. *Wilson*, 2 N. H. 291; *Willard* v. *Hammond*, 21 N. H. 382, 385; *Taylor* v. *Barron*, 35 N. H. 485, 495, 496, and authorities cited; *Sabin* v. *Gilman*, 1 N. H. 193; *Dyer* v. *Hunt*, 5 N. H. 401.

Suppose the ward should come into this State, could the guardian lawfully come here and take him back to the State of New York by force, by virtue of his authority as guardian appointed in that State? Or, suppose the ward had not removed from this State to the State of

New York, could the guardian lawfully carry him there without his consent? If he could not, it is simply because the guardian's authority does not extend beyond the limits of the State in which he received his appointment. If he is not entitled to be trusted as guardian here, the defendant cannot safely deal with him as guardian in respect to the matter in controversy.

The ward has rights in the money in the hands of the defendant, which rights originated here; and the property has come under the legal supervision of the court of probate here, and that court is bound to retain its supervision over and to protect the rights of the ward in it. The ward, by reason of his minority, is incapable of any voluntary action in relation to it, and whatever is done with it must be done without his consent; and the court is not at liberty to allow the property to be taken beyond its jurisdiction without obtaining security for the proper disposition of it, such security as will enable the court to compel such disposition. The ward cannot protect his own rights. Our laws have placed the property under the protection of the court of probate here, and have not authorized that court to relinquish the power of protecting it. The ward may be said to have a vested right to that protection. Guardians appointed here are required to give bonds of a particular character—Gen. Statutes, chapter 165, section 2. —and to invest the property of their wards in a particular manner. Chapter 166, section 11. But the security provided for in those sections may not exist in the State of New York.

Ancillary administrators are required to pay over moneys to principal administrators, appointed in the States of their intestate's domiciles, because such moneys are to be distributed according to the laws of those States; but no such reason exists here, and the fourth position of the plaintiff's counsel is therefore without foundation.

FOSTER, J. In *Taylor* v. *Barron*, 35 N. H. 495, BELL, J., said,—" In this country it is settled by many decisions, that our courts take no notice of a foreign administration, as conferring the right to sue or defend as executor or administrator; and before either can be recognized as the personal representative of the deceased, he must be clothed with authority from the laws of the State in whose courts he desires to appear. Administration only extends to the assets of the intestate within the State where it is granted." In support of this proposition he cites numerous authorities of many State tribunals, as well as of the federal courts,—among them the case of *Sabin* v. *Gilman*, decided in 1818, 1 N. H. 193, which is clear and decisive to the same point.

The legal principle established by these and other cases, and the ground upon which they are based, is, that there is no privity between administrators, or any other officers or parties connected with the administration of estates, deriving their authority under different governments; and it seems to be founded in the convenience, not to say necessity, of independent administrations in every State where there is.

property belonging to the estate, and the independence of such administrations upon each other. 3 Redfield on Wills 24, n. 7 ; *Clark* v. *Clement,* 33 N. H. 563 ; *Stacy* v. *Thrasher,* 6 How. 59.

The primary probate jurisdiction of wills, and of everything pertaining to the settlement of estates, is exclusively in the place of the domicile of the deceased. 3 Redf. Wills 20. " Of such unqualified extent is this rule, that a will cannot be used as evidence affecting the title of personalty, in any court of common law, until it has been proved and allowed in the probate court. *Strong* v. *Perkins,* 3 N. H. 517 ; *Kittredge* v. *Folsom,* 8 N. H. 110. And by our laws, " no person shall intermeddle with the estate of any person deceased, or act as administrator thereof, until he has given bond to the judge" of probate. Gen. Stats., ch. 176, sec. 12. So, also, " all proceedings in relation to the settlement of the estate of a person deceased, or in relation to the property or estate of any person under guardianship, shall be had in the court of probate of the county in which administration was granted, or in which the guardian was appointed." Gen. Stats., ch. 170, secs. 7, 8.

These statutory provisions are indicative of the supposed necessity for the maintenance of a certain, established, and independent jurisdiction of all matters relating to the administration and settlement of estates.

" As a general rule, in the American States," says Mr. Redfield, " the authority of a personal representative is strictly limited to the State from which it is derived. This is in analogy to the practice in the ecclesiastical courts, where the ordinary was held to have no authority beyond the limits of his own diocese, and that consequently he could confer none." 3 Redf. Wills 24.

And Chancellor KENT says,—" The general rule in this country and in England is, that letters testamentary or of administration granted abroad give no authority to sue or be sued in another jurisdiction, though they may be sufficient ground for new probate authority." 2 Kent's Com. *432, note (c) ; *Tourton* v. *Flower,* 3 P. Wms. 369.

As to the settlement of estates, the several States are regarded as strictly foreign to each other. *Goodwin* v. *Jones,* 3 Mass. 514 ; *Dixon* v. *Ramsay,* 3 Cranch 319 ; *Wood* v. *Gold,* 4 McL. C. C. 577.

The administrator appointed in one State has no power over the property in another State. *Taylor* v. *Barron,* before cited ; *Goodall* v. *Marshall,* 11 N. H. 88 ; *Willard* v. *Hammond,* 21 N. H. 385 ; 2 Kent's Com. 431. He has no interest in debts due there, nor any authority to collect them. *Thompson* v. *Wilson,* 2 N. H. 291 ; *Heydock's Appeal,* 7 N. H. 503 ; *Taylor* v. *Barron,* before cited.

There is, therefore, as before stated, no privity between administrators appointed in different jurisdictions. In England and in Ireland administration may be granted in certain archiepiscopal provinces, and in certain " royal peculiars " like the city of London ; and if there are *bona notabilia* in each of these jurisdictions, administration must be granted in each. And administration granted in either of these

provinces or peculiars is void and inoperative as to any estate of the deceased which is not assets within that jurisdiction.    See cases cited in *Taylor* v. *Barron*, 3 Redf. Wills 29, n. 16.

Simple contracts and choses in action are assets where the debtors reside. Story's Confl. 425.    An administrator, appointed in York, cannot bring *scire facias* in the queen's bench on a judgment which is assets in the province of Canterbury.    *Carlise* v. *Greenwood*, 7 Mod. 15.

Mr. Justice BELL says,—" No case has been found in England where an administrator, appointed in one province, has attempted to bring an action founded on the idea that any privity existed between him and an administrator appointed in another province ; nor any case where a defence has been set up on that ground."    35 N. H. 495.

There can be no distinction in principle between the case of non-resident guardians and foreign executors or administrators, with regard to the matter of the present inquiry.    See *Commonwealth* v. *Rhoads*, 37 Pa. St. 60.

And " according to the doctrine of the common law, now fully established both in England and America, the rights of a guardian over all property whatsoever are strictly territorial, and are recognized as having no influence upon such property in other countries or States, where different systems of jurisprudence are established.    No foreign guardian can, *virtute officii*, exercise his functions in another country or State, without taking out other letters of guardianship, or otherwise conforming to the local law.    Such is the rule in both countries." Schoul. Dom. Rel. 445 ; Story Confl. Laws, sec. 504 ; Cooley's Const. Lim. 340.

In *Powers, guard'n,* v. *Mortee,* 4 Am. Law Reg. 427, the U. S. circuit court decided that the " authority conferred on a guardian in New York can give him no right to come into Louisiana and take the minor's property there, which is already in the possession of a legal tutrix," the court, McCALEB, J., saying,— " It is impossible to perceive upon what solid grounds the claims of the plaintiff in this case can rest.    The rights and powers of guardians are considered as strictly local, and not as entitling them to exercise any authority over the person or personal property of their wards in other States, upon the same general reasoning and policy which have circumscribed the rights and authorities of executors and administrators."

And see *Morrell* v. *Dickey,* 1 Johns. Ch. 153; *Sprague* v. *Litherberry,* 4 McL. 442.

And Judge STORY (Confl. Laws, sec. 504 *a*) uses this language : " No foreign guardian can, *virtute officii*, exercise any rights or powers or functions over the movable property of his ward, which is situated in a different State or country from that in which he has obtained his letters of guardianship.    But he must obtain new letters of guardianship from the local tribunals authorized to grant the same, before he can exercise any rights, powers, or functions over the same."    " Few decisions upon the point," he says, " are to be found in the English or American authorities, probably because the principle has always been taken to be

unquestionable, founded upon the close analogy of the case of foreign executors and administrators."

Mr. STORY, at the time of the publication of the first edition of his " Conflict of Laws," seemed to consider the weight of foreign authority to be in favor of allowing the guardian to assert his claims everywhere, to the same extent as they are acknowledged by the law of the domicile (Story Confl. Laws, sec. 500) ; and such, says Mr. Schouler, seems to be the Scotch doctrine. But the opinion of Judge STORY, with regard to the weight of authority in this respect, became much modified before the publication of the third edition of his " Conflict." See secs. 500 *a* and 504 *a*.

And Mr. Frazer, in his commentaries on the Scotch law of guardian and ward, page 604, while declaring the practice to be to recognize the nomination of executors in a foreign testament, asserts that they must be required to " go through the form of taking out confirmation, at all events, before they can extract decree, in any action raised by them to recover Scotch estate."

It is manifest that the weight of American authority is very strong against the right of the present plaintiff to maintain this action by his guardian, deriving authority solely from the laws of New York.

The indulgence of a liberal comity might authorize us to retain jurisdiction of the present suit, and to permit the infant plaintiff to prosecute it by a guardian appointed by this court, *ad litem ;* but we are not inclined to depart from the established practice, founded, as we regard it, upon strong considerations of convenience, uniformity, and certainty, amounting nearly to necessity, and in a sound policy plainly indicated by our laws, in the various and specific provisions enacted for the protection and security of the property and estate of minors, and for the control of those charged with the trust of guardianship. See Gen. Stats., ch. 166 ; ch. 165, secs. 11–21 ; ch. 170, sec. 3.

The plaintiff, in support of his claim to prosecute this suit, invokes the aid of the constitution of the United States, art. 4, sec. 1, which declares that " full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State."

But it is clear that this provision was not intended to prevent an inquiry into the right of the foreign State to exercise authority over the parties or the subject-matter. The constitution does not confer any new power upon the States, but it intends simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It does not make foreign judgments domestic judgments to all intents and purposes, but only gives a general faith, credit, and validity to them as evidence. Story's Const., ch. 29 ; Story's Confl. Laws, sec. 609; Cooley's Const. Lim. 17, note 1 ;—see *Thurber* v. *Blackbourne,* 1 N. H. 242 ; *Hall* v. *Williams,* 6 Pick. 232.

We have shown that no legal privity exists between the administrator here and the guardian deriving his authority from a foreign government, and it is clearly settled that without such privity no right of action accrues. *Talmage* v. *Chapel,* 16 Mass. 71 ; *Aspden* v. *Nixon,* 4

How. 467 ; *Stacy* v. *Thrasher*, 6 How. 44 ; *Taylor* v. *Barron*, 35 N. H. 498 ; Cooley's Const. Lim. 48, 49.

It may deserve consideration whether the probate court may not, in a judicious exercise of power, direct the payment of the fund in this case into the hands of the foreign guardian. It is suggested that in the exercise of such power the court should take a special bond for the safety of the fund and the due account thereof to the heir, unless the court should be satisfied that the general guardian and his sureties would be responsible for the fund in the State where the appointment of guardian was made. See *Baker Andrews's Heirs*, 3 Humph. 592.

It would seem that by such order an administrator would be protected. But this case is not an application to the probate court, and this action cannot be maintained as a matter of right.