## THE INHABITANTS OF WISCASSET *vs.* THE INHABITANTS OF WALDOBOROUGH.

Where a son, having received a conveyance of all his father's property, gave a bond to the town, conditioned to support him and another son during life; this was held not to be " supplies or support indirectly received from some town as a pauper," so as to prevent the father, and with him the other son, from gaining a settlement by residence, under *Stat.* 1821, *ch.* 122.

The settlement of a person *non compos*, though of full age, will follow that of his father, with whom he resides.

In this case, which was stated by the parties, the question was upon the domicil of one *Charles Acorn*, a pauper, *non compos* from his infancy, and now upwards of forty years of age. He always lived in the family of *John Acorn*, his father, whose residence and lawful settlement were in *Waldoborough* till the year 1816. In that year the father, upon an inquisition regularly made by the selectmen of *Waldoborough*, was adjudged *non compos* by reason of extreme old age, and a guardian was duly appointed over his person and estate, which consisted of a considerable farm and stock, sufficient, if properly managed, to support him and his wife and *Charles*, during their lives. Soon afterwards, upon application of his children, and on condition that they would maintain him, the letter of guardianship was repealed by the Judge of Probate; and on the 27th day of *February* 1816, *George Acorn* of *Wiscasset*, a son of *John*, received a conveyance and

assignment of all his father's property, and thereupon gave to the inhabitants of *Waldoborough* a bond, conditioned for the support and maintenance of his father and mother during their lives, and for the like support of *Charles*, the pauper, for the term of eight years then ensuing; and removed them all to his own house in *Wiscasset*, where they dwelt at the time of the passing of the act of *March* 21, 1821. The pauper never owned any property.

*Sheppard*, for the plaintiff, contended, upon these facts, that neither the pauper nor his father acquired a settlement in *Wiscasset* by residence there at the passing of the act. The domicil is changed, not merely by removing to another place, but by the *intention* of always staying there. But this implies the power of volition, which a person *non compos* does not possess. He stands in the situation of an infant, a *feme covert*, or a slave, neither of whom can gain a settlement by any act of their own. *Upton v. Northbridge* 15 *Mass.* 237. *Watson v. Cambridge ib.* 286. *Hallowell v. Gardiner* 1 *Greenl.* 101. *East Sudbury v. Waltham* 13 *Mass.* 460. This principle applies as well to the father as the son, his incapacity, caused by extreme age, not being removed by the repeal of the guardianship.

He further contended that the son being supported, at the time of the passing of the act, under a special contract with the town of *Waldoborough*, and without any consideration on their part, he must be regarded as " indirectly receiving supplies as a pauper" within the provisions of the act, and so did not acquire a settlement under the clause respecting domicil.

*Reed*, for the defendants, said it had been settled that a person *non compos*, having no estate, and living with his father, might have the settlement of the father, as one of his family, though of full age. *Upton v. Northbridge* 15 *Mass.* 237. The father in this case being capable of conveying his estate, was capable of choosing his own place of abode; and if resident in *Wiscasset* with his own consent, for life, at the passing of the act, his domicil, and with it the settlement of the pauper, were there fixed. The fund out of which they were supported was the estate thus conveyed to *George Acorn*, and of course was not furnished, even

indirectly, by the town of *Waldoborough.* The taking of the bond was merely a measure of precaution, to guard against a possible danger, which the subsequent passage of the statute has forever prevented.

The Court said that the pauper, though incapable of gaining a settlement in his own right, by reason of mental imbecility, might acquire one derivatively from his father; whose residence being in *Wiscasset* at the time of passing the statute, his settlement and that of his son were thereby transferred to that place. The bond, they said, could in no view be regarded as supplies furnished by *Waldoborough,* that town having neither paid money nor suffered damage to obtain it.

*Judgment for the defendants.*