NORTON S. TOWNSEND, Appellant, *vs.* DAVID HENRY KENDALL, by ANDREW J. TILLOTSON, his guardian *ad litem*, Respondent.

APPEAL FROM THE DISTRICT COURT OF WINONA COUNTY.

The Courts of this State will recognize the foreign appointment of a guardian, as creating the relation of guardian and ward between the parties in this State, subject, of course to the laws of this State, as to any exercise of power by virtue of such relation, either as to the person or property of the ward.

When a foreign guardian or any one else attempts to exercise any restraint over the person of any one within the State, the writ of *heabeas corpus*, or any other appropriate remedy, will always be effectual to inquire into the propriety of such attempted restraint. The Courts have full power to investigate the whole subject of guardianship, and may refuse the guardian the custody of his ward, or restore him to such custody; but a guardian cannot be held guilty of false imprisonment simply from the fact that he takes charge of his ward's person.

A guardian may change the residence of his ward from one State or country to another, when that change will be for the benefit of the ward. But a Court of Chancery would scrutinize the exercise of this right upon the least suspicion of fraud against the ward.

Points and authorities of Appellant :

*First.*—The Court erred in sustaining the demurrer.

*1st.* The power and reciprocal duty of a guardian and ward are the same *pro tempore* as that of a father and child. 1 *Blackstone's Com.* 382 ; 2 *Kent's Com.* 9 *Ed.* 236. Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State. *Art. 4, Sec. 1, Constitution U. S.*

*2d.* The father has the legal right to the custody and control of his child. *Matter of Kottman,* 2 *Hill, S. C.* 363 ; *People ex rel. Barry vs. Mercine,* 3 *Hill,* 399 ; 2 *Story's Equity Jurisp. Sec.* 1340.

*3d.* A parent or guardian has a right to change the residence of his infant children or wards, from one State to another, provided such change of residence is made in good faith and with a view to their benefit; ( *Wood vs. Wood,* 5 *Paige, Ch. R.* 605) even if such change, in case of the death of such minors, would affect the right of succession to their property. *James Pedan vs. Administrator of H. Robb,* 8 *Ohio R.* 229 ; *Story's Com. Conflict of Laws,* 2d *Ed. Sec.* 506.

*Second.* The principle is well settled upon authority, that

whatever rights a party acquires in or authority over property or persons in one State, by the laws thereof, those rights will be respected and enforced in any other State, and in such cases no question of jurisdiction can arise.

1st. The relation of guardian and ward is only local, so far as the mode of creating it is concerned. After it is once legally created, the relation is domestic and governed, in conferring rights and imposing obligations, by the principles of the common law, and it is legally created when the Court appointing, has at the time jurisdiction of the person of the ward. 2 *Kent's Com.* 5th *Ed.* 227, *M. P.* 228; 4 *Bacon's Abridgement*, 538, 539, 540, *and* 543.

2d. In this case it is admitted that the Court had jurisdiction of the person and property of the ward at the time of the appointment of the Defendant, and that the relation of guardian and ward was legally created in the State of Ohio, between the Plaintiff and Defendant, and that the Defendant took possession of the Plaintiff there as his guardian.

3d. The right and power of retaking possession of a ward by his guardian, when he has been removed from his possession without his knowledge or consent, as in this case, is not exercised under judicial process, but results from the nature of the relation existing between them.

The letter of guardianship is not process, nor anything in the nature of it, but is merely a record or memorial of the delivery of the ward to the guardian, and of the relation existing between them.

4th. It cannot be questioned but that a guardian appointed by the Probate Court, has a right to go into another county in the State where he was appointed, to take his ward, although the Court making the appointment may not have jurisdiction beyond its own county. This shows that the jurisdiction of the Court in no way controls the authority of the guardian; and as little can the jurisdiction of the State affect this right, as between the ward and his guardian. It cannot be true, that a ward by leaving or being taken from the State where he was committed to the care of his guardian, to another, can divest his guardian of all authority over him, and subject him to an

52

action of false imprisonment for retaking possession of him in the State where he finds him.

*5th.* The principle upon which bail are allowed to take their principal out of the State, where the bail piece was entered, without subjecting themselves to this action, is the same. *Nicolls vs. Ingersoll*, 7 *J. R.* 454, 455, *and notes.*

*5th.* A deed of trust of or chattel mortgage upon personal property, given in a State where, by the laws thereof, such deed of trust or chattel mortgage conveys to the grantee or mortgagee the legal title of the property, although the possession remains in the grantor or mortgagor, such title thus acquired is valid in any other State, to which the property may be taken without the consent of the grantee or mortgagee, and sold or pledged to a citizen of such State, having no knowledge of such title. *Bank of the United States vs. Lee*, 13 *Peters' R.* 110, 120.

*7th.* If a foreign administrator has, in virtue of his administration, reduced the personal property of the deceased there situated, into his own possession, so that he has acquired the legal title thereto, according to the laws of that country, if that property should afterwards be found in another country, or be carried away and converted there against his will, he may maintain a suit for it there in his own name and right, personally, without taking out new letters of administration. *Story's Com. Conflict of Laws*, 2d *Ed. Sec.* 516; *Tallmadge, Administrator, &c. vs. Chappel and others*, 16 *Mass. R.* 71.

*8th.* In such a case, if the right of the administrator to the possession of the property, or to recover its value is disputed, the burden of proof is upon him, and he must show how his right accrued, to do which, he must show that he is the administrator of the estate of which the property forms a part; that in the course of his administration, he came into the possession of it in the State where, and under whose laws he was appointed, which showing as we have seen, would entitle him to recover. Hence, it follows, as a necessary sequence, that if the administrator in the foreign State had possessed himself of the property without action, those facts pleaded, would constitute a good defence to an action brought against him in such foreign State, to recover the property or its value

from him. And the reason is simply this: The right to the property and its possession was in him in the State where he was appointed, before it was removed therefrom. So in the case at bar, the possession, and the right to the possession of the person of the Plaintiff, as against all persons, was vested in the Defendant in the State of Ohio, by and under the laws of that State, before the Plaintiff was removed therefrom to this State. Such being the case, we submit that the removal of the Plaintiff from the Defendant's possession in the State of Ohio to this State, no more divests him of his right to the possession of the Plaintiff's person than if, instead of his person, it had been his property. Hence, the facts alleged in the answer constitute a good defence to this action, and the judgment should be reversed.

Points and authorities for the Respondent:

The question in this case is, was the demurrer to the answer properly allowed by the Court below? Or, in other words, does the new matter set up in the answer constitute a defence?

The object of the answer must be either,

*1st.* To state facts in *mitigation of damages* merely, or

*2d.* To state facts constituting a full and *complete defence* or justification of the facts alleged in the complaint.

*First.* Matter in *mitigation of damages merely* ought not to be pleaded, and will be held bad on demurrer where the action is one sounding *in damages.* It can be taken advantage of only on the assessment of damages.

This was so at common law. See common law authorities *passim.*

It is still so under our code of practice, except so far as it is changed by statute in the two cases of libel and slander. *Stat. of Minn. p.* 543; *Smith vs. White,* 7 *How. N. Y.* 227; *Salters vs. Ripp,* 12 *id.* 342; *Gilbert vs. Rounds,* 14 *id.* 46; *Lane vs. Gilbert,* 9 *id.* 150; *Welch vs. Hazelton,* 14 *id.* 99.

*Second.* The facts set forth in the answer constitute no *full and complete defence* to or *justification* of the facts set forth in the complaint.

The appointment of the Defendant by the *Courts of the State of Ohio* as guardian of the Plaintiff, gives him *no authority* to

exercise any of the *rights* or *privileges* of such *guardian beyond the limits* of that State. A *statutory guardian* has no authority as such over the *person of his ward beyond* the *jurisdiction* of the State by whose Courts he was appointed. Like executors, and administrators his powers are strictly *local. Story on Confl. Laws, Sec.* 504, *A.; Hind on Hab. Cor. Sec.* 52; *Morril vs. Dickey.* 1*st Johns. Ch.* 156; *Fenwick vs. Sears Adm'r.,* 1 *Cranch* 259; *Dixon's Executors, vs. Ramsey's Executors,* 3 *id.* 319; *Kerr vs. Devisees of Moon,* 9 *Wheat.* 565; *Plummer vs. Brandon,* 5 *Ired. Equity* 190; *Fletcher's Adm's. vs. Wein, et al.* 7 *Dana,* 348; *Kraft vs. Weikey,* 4 *Gil. and John.* 332; *Dupree vs. Perry,* 18 *Ala.* 34; *Alston vs. Foster,* 6 *How. Miss.* 406; *Sabin vs. Gilman,* 1 *N. H.* 193; *Matter of Jane N. Wollstonecraft,* 4 *Johns. Ch. R.* 80.

The power of a *parent over a child* differs from that of a *statutory guardian* over his ward, both in the *source* and the *extent* of that power. That of the parent over the child arises from the *status* of the child itself, and is exercised by virtue of the relation of *parent* and *child* as such. That of the *statutory guardian* is exercised *solely by virtue of the appointment* of the *Court,* whose officer he is. The guardian is " *in loco parentis*" only so far as *the statute* gives him powers or imposes duties upon him similar to those of the parent, *and no further.* The guardian is sometimes said to be in the place of the parent, but this is true only with reference to the subject matter on which he acts, and not with reference to the *character* or *nature* of the relation which he sustains to the ward. As to the difference between parent and guardian, see 2 *Kent. Com.* 225, 7*th Ed.; Hind. on Hab. Cor*; 50–1; *Hancock vs. Hamstead,* 1 *N. H.* 265; *Velde vs. Levering,* 2 *Raule,* 269; *Leech vs. Agnew,* 7 *Barr.* 21.

SARGENT & FRANKLIN, Counsel for Appellant.

C. N. WATERMAN, and NORTON & MITCHELL, Counsel for Respondent.

*By the Court.*—FLANDRAU, J. This is an action for false imprisonment. The defence is that the Defendant was duly

appointed, by a competent Court in the State of Ohio, the guardian of the person and estate of the Plaintiff, who is an infant, and at the time of such appointment resided in the State of Ohio. That the guardian has at all times made suitable provision for his ward in the State of Ohio, and has never consented to his departure therefrom. That the mother of the Plaintiff had intermarried with one Tillotson, and removed from the State of Ohio to this State, and brought the Plaintiff with her, without the knowledge or consent of the guardian, and that the guardian on learning the whereabouts of his ward, came and retook him peaceably for the purpose of taking him back to Ohio, which was the taking, &c., mentioned in the complaint.

To this answer the Plaintiff demurred, and the Court sustained the demurrer.

I have merely aimed to state the substance of the pleadings. The question presented is whether the authority of the guardian conferred by the Courts of Ohio would extend beyond the local jurisdiction of that State, and authorize its exercise within the limits of this. If it could be so exerted then the answer is good, otherwise it shows no justification for the Defendant seizing the person of the Plaintiff and carrying him beyond the State, or in any manner controlling or restraining his actions.

The father is the natural guardian of his children, and may control their persons, as to the place of their domicil, the place of their education, the course of their travels for health, pleasure, or instruction, and in all the various aspects in which the exercise of such control may be invoked, depending upon the station in life of the parties, and other circumstances of each individual case. Yet this control of the person of the child by the father, is by no means an arbitrary and absolute one. The Court of Chancery possesses full and complete jurisdiction and power over the persons and estates of infants, and all other persons laboring under legal disabilities, as well as their guardians, trustees or other custodians, and it matters not whether the relationship results from natural ties, or is created by law; in all cases of this nature the jurisdiction is plenary and potent to reach and afford relief in every case of an improper exercise of power. At one time the Court prevents the father from

taking his infant child out of the kingdom (*De Manneville vs. De Manneville*, 10 *Ves.* 51,) for one reason ; at another time the Court exercise the same power in the same way, for another, (*Wellesley vs. Wellesley*, 2 *Bligh's Parl. Rep. N. S.* 124; 1 *Dow & Clark*, 152,) and again it restrains the testamentary guardian from taking his ward beyond the jurisdiction of his appointment for reasons entirely different, while fully admitting his general power so to do. 5 *Paige Ch. R.* 296, *Wood vs. Wood.* The same jurisdiction extends to statutory guardians. 2 *Story's Equity, Sec.* 1339.

As a general rule the power of a guardian over the person of his ward, is the same as that of a father over the person of his child, during the existence of the relationship. 1 *Black. Com.* 462 ; 2 *Kent, Cow.* 9 *Ed.* 382 ; *Jacobs' Law Dic. Vol.* 3, *p.* 216. He may therefore control his actions to the same extent, subject to the same regulations, although it always requires a much stronger case to induce a Court of Chancery to interfere between parent and child, than it does to evoke such intervention between guardian and ward.

Mr. Story says in his work on equity jurisprudence that "the Court of Chancery will assist guardians in compelling their wards in going to the schools selected by the guardian, as well as in obtaining the custody of their wards when they are detained from them," to which he cites numerous authorities. 2 *Story's Equity, Sec.* 1340. It is quite well settled in England and the United States that a guardian may change the residence of his ward from one State or country to another, when that change will be for the benefit of the ward. *Story on Conflict of Laws, Sec.* 506. And this, though it may change the nature of the succession of the infant's estate should he die in his new domicil; but the least suspicion of fraud would be closely scrutinized by a Court of Chancery. This consideration, however, does not affect the existence of the power in the guardian, but only goes to the proper and faithful exercise of it. The power has been clearly recognized in the following English and American cases. *Potinger vs. Wightman,* 3 *Meriv. R.* 79, 80; *Guier vs. O'Daniel,* 1 *Binn. R.* 349 ; *Cutts vs. Haskins,* 9 *Mass.* 543 ; *Holyoke vs. Haskins,* 5 *Pick.* 20 ; *Wood vs. Wood,* 5 *Paige, Ch. R.* 605; *James Pedan vs. The*

*Administrator of Hobb,* 8 *Ohio,* 227.   The latter case is very much in point.

There can be no question of jurisdiction raised here, as the letters of guardianship under which the Defendant claims the custody of the Plaintiff are not process, nor have they any resemblance to process. The Court in which such letters are conferred may be a tribunal of strictly limited jurisdiction as to the matters confided to it, and also territorially, but the effect of the limitation is to confine it to certain classes of cases, and certain classes of suitors, as for instance persons residing within the territorial limits of the Court, or having property therein. When a Court so limited acts upon matters not within its jurisdiction its decrees and proceedings are void, but when it acts in any case within its jurisdiction, its acts are as valid and effective as those of any other Court. In this case the answer alleges the appointment of the Defendant as guardian by the Probate Court of the county of Lorain in the State of Ohio, and also avers that such Court had competent jurisdiction to make the appointment. In the absence of any knowledge of the laws of the State of Ohio, which we are not permitted to take judicial notice of, we are bound to presume that when the Defendant was created guardian of the person and estate of the Plaintiff, the relation which obtained between them, was that of guardian and ward in its ordinary legal acceptation and no other; and that relation does not depend upon the Court that established it, for its powers, privileges or liabilities, but upon well established rules of law and equity, which are common to this country and England when not changed by statutory provisions. We will suppose that the Probate Court of Lorain county in the State of Ohio, is a tribunal of limited jurisdiction in the manner above stated, and may in particular cases appoint guardians for infants, yet we must also suppose that whatever tribunal in that State possesses the powers of the Court of Chancery, may do the same thing. Now in either case, when once appointed, his powers are the same, although the Probate Court may have had county jurisdiction only, and the Court of Chancery possessed jurisdiction co-extensive with the limits of the State. The power once conferred follows the person of the ward. It

would lead to great inconvenience if it should be held that a guardian could not exercise his authority or be recognized out of the State or locality of his appointment. Such a ruling would embarrass the guardian in investing the funds of his ward in securities of other States, and render it necessary that he should be reappointed in every State or county through which he should pass with his ward in travelling, if an emergency should arise in which it became necessary to exert his authority. The Court say in the case of *Pedan vs. Administrator of Robb*, 8 *Ohio*, 229, "a guardian does not, like two or more administrators represent two or more conflicting classes of creditors residing in different jurisdictions, and themselves residing in different countries. He is not subject to the same disabilities as an administrator, &c. He may remove from the State where he was originally appointed to any other, and, although it was once a greatly controverted question, yet it is now settled that he has even a right to change the domicil of his ward."

The relation is recognized in almost all civilized countries, although in many, different rules have been held to govern it. Justice Story in his Conflict of Laws, collects at Sections 495 to 507, the laws of other countries as stated by many learned law writers, and gives his own views upon the law of this subject as recognized in England and this country. From a very careful examination of all he says, and the cases to which he refers, which have been attainable, we think the better rule is, upon principle and authority, to recognize the foreign appointment of a guardian, as creating that relation between the parties in this State, subject of course to the laws of this State, as to any exercise of power by virtue of such relation either as to the person or property of the ward. We find that provision has been made by the statutes of this State for the manner in which foreign guardians shall act when they desire to sell the real property of their ward situated within this State. *Comp. Stat. p.* 423, *Secs.* 43, 44. All that is necessary to obtain full recognition as guardian, is to file an authenticated copy of the foreign appointment in the Court of Probate of the county where the land is situated, and the foreign guardian is at once admitted to the same rights and powers over the real estate of his ward

situated within the county that are possessed by a guardian of our own appointment. This is a full statutory recognition of the foreign appointment, and the provision is made in regard to selling the real estate of the minor or other person under disability, from the necessity which exists for the intervention of the Court in judging of the propriety of a sale of real estate in any particular case, and to make title for one incapable of executing a valid conveyance.

When a foreign guardian or anybody else attempts to exercise any restraint over the person of any one within this State, the writ of *habeas corpus* or any other appropriate remedy will always be effectual to enquire into the propriety of such attempted restraint, and upon such enquiry the proper Court can make such order or judgment as the case may require. If the facts stated in the answer in this case had been interposed as a return to a writ of *habeas corpus*, and nothing else had been made to appear, there can be very little doubt that they would have been a good answer to a discharge under the writ. The Courts of this State have full powers to investigate the whole subject of the guardianship, and may upon a proper showing refuse the guardian the custody of his ward, or restore him to such custody, but a guardian can never be held guilty of false imprisonment simply from the fact that he takes charge of his ward's person, which is all that appears in this case, the answer being taken as confessed by the demurrer.

As there may have been some violence or impropriety committed in fact, we send the case down for a new trial.

Judgment reversed and a new trial awarded.