HARVEY KIRKLAND vs. INHABITANTS OF WHATELY.

If a minor leaves the domicil of his origin with the consent of his guardian and lives for
two consecutive years exclusively in another town, considering it as his home, with no
definite intent on the part of his guardian to cause him to return, he acquires a new
domicil in the latter place, and his property is properly taxable there.

CONTRACT by the guardian of Isaac Sheldon, a minor, to re
cover back the amount of taxes assessed upon the property of
Isaac by the defendants in 1859, and paid by the plaintiff under
protest. The following facts were agreed in the superior court:

Isaac was born in 1845, and has been blind for many years.
His father died in 1852 and his mother in 1854, both having
their domicil in Northampton. His paternal grandfather resides
in Northampton, but has had no wife for many years. His
maternal grandfather and grandmother reside in Whately. Un-
til his mother's death, the family of his father lived in the same
house with his paternal grandfather, but after her death, the
grandfather having no family except hired help, he ceased to
live there. Controversies arose as to where he should remain,
and suits as to matters connected with his estate. In April
1857 these controversies were arranged, and Isaac by his guar-
dian's direction was brought to his grandfather's house in
Whately, where he has ever since remained, considering it as
his home. The guardian has regularly paid for his board there.
Since the death of his mother, he has had no place in Northamp-
ton to which he has habitually resorted or gone as a home, but
occasionally has been to see his relations there ; and the guar-
dian has not reserved or provided for him any boarding place or
rooms at Northampton, or had any such place in his mind. His
friends and attachments are almost entirely in the family of his
grandfather in Whately, and he has been living there without
any plan or expectation of removing to any other place. He
owns real estate to a large amount in Northampton, which is
managed by the guardian ; and the guardian has been taxed in
Northampton every year since his appointment, in 1853, for

personal estate of Isaac, and has paid the taxes without objection till last year. He has also been taxed in Whately since 1859, but has paid no tax there, except under protest. When Isaac first went to Whately, the guardian intended that he should merely make a visit of a few months there, and afterwards go to some school out of Whately, and so informed him, and afterwards endeavored at various times to induce him to go to some such school, but without success. The guardian has allowed him to remain in Whately, because Isaac wished it; and has no definite intention to allow him to remain, or to remove him.

Upon these facts, judgment was rendered in the superior court for the defendants, and the plaintiff appealed to this court.

*C. Delano,* for the plaintiff. The domicil of origin was in Northampton, and an act of removal and an intent to acquire a new domicil must concur to change it. The minor having no legal will could not of himself change his domicil. Phillimore on Domicil, 37. The guardian alone can exercise this legal will, and even he cannot at pleasure change the minor's domicil, but only when acting in good faith and reasonably, and at the same time changing his own domicil. Phillimore on Domicil, 38, Amer. note. 2 Kent Com. (6th ed.) 227, *n.* In this case, the guardian has neither by his acts nor declarations indicated an intent to change the minor's domicil, and the facts repel any presumed intent. *Lyman* v. *Fiske,* 17 Pick. 231.

*G. T. Davis & S. O. Lamb,* for the defendants. The domicil of a minor may be changed with the assent of his guardian. *Holyoke* v. *Haskins,* 5 Pick. 25. *Granby* v. *Amherst,* 7 Mass. 1. *Upton* v. *Northbridge,* 15 Mass. 238. *Hopkinton* v. *Upton,* 3 Met. 165. This assent may be express or implied. *Holyoke* v. *Haskins, ubi supra. Potinger* v. *Wightman,* 3 Meriv. 79. *Guier* v. *O'Daniel,* 1 Binn. 349, *n.* Story Confl. Laws, § 506. 2 Kent Com. (6th ed.) 227, *n.* In this case, the guardian assented to acts which made a new home for his ward; and the inference from these acts cannot be controlled by the mere will of the guardian. *Lyman* v. *Fiske,* 17 Pick. 231. Opinion of Justices, 5 Met. 589.

BIGELOW, C. J.    The single question in this case is, whether the agreed facts show that the domicil of origin of the minor had been changed, so that at the time of the assessment of the tax in controversy, he had his legal residence in Whately.   Like most cases involving the issue of domicil, the solution of the question is not entirely free from difficulty.   But on careful consideration we are of opinion that the domicil of origin had been lost, and a new one gained in the town of Whately.   It is admitted that for two consecutive years the minor with the consent of his guardian had lived exclusively in that town. All the usual outward *indicia* by which the residence of a person is determined pointed solely to Whately as the place where he resided and had his home.   This, then, is one essential element of domicil.   The other is the intent with which he there lived; for the fact and intent must concur, in order to establish a legal domicil.   In this case, as the domicil of a minor under guardianship is at issue, the intent of the guardian is to be regarded.   So far as the facts agreed indicate any intent on his part having reference to the domicil of origin of his ward at Northampton, it appears that, when he went to Whately and ever since, the guardian has had no definite intention to cause him to return to Northampton to reside.   It appears, then, that the ward had for two years ceased in fact to reside at Northampton, and that when he left there and during all the subsequent time, there has been no fixed intention in the mind of the guardian that he should return thither to live.   It follows necessarily that neither the fact nor the intent concurred in fixing that place as his domicil.   On the contrary, the ward having ceased to live there, and his guardian having no fixed intent that he should return to that place to reside, it would seem very clear that the domicil of origin was abandoned.   We know of no case, in which a domicil has been held to continue, where the fact of actual residence and intent to return are both wanting.   But it is urged that the rule of law is that a domicil of origin must continue till a new one is acquired, because every person must have a domicil somewhere.   This is undoubtedly true.   And we are of opinion that the ward acquired a new

home in Whately. As has been already said, the fact of his actual residence there is indisputable. It is also equally clear that the guardian intended, so far as he had an intent on the subject, that he should there remain until he formed a definite purpose to remove him elsewhere. There was no intent definitely formed that he should return to Northampton, or go to any other place than Whately. He went to live there with an intent on the part of his guardian that he should remain until he formed an intent to remove him. The ward was then in fact living in Whately with an intent that he should remain for an indefinite period, and until a new intention existed to procure a home for him in another town. So far as any definite intent existed in regard to his domicil, it established it at Whately; all else was indefinite and unformed. *Holmes* v. *Greene*, 7 Gray, 299. *Judgment for the defendants.*