## BROOKOVER, GUARDIAN, *v.* KASE, TREASURER.

[No. 6,097. Filed January 28, 1908.]

1. TAXATION.—*Ward's Property.*—*Situs.*—The situs for taxation of the personal property of an insane ward is the place where such ward resides. p. 105.
2. TRIAL.—*Special Findings.*—*Residence.*—*Conclusions of Law.*—A special finding that an insane ward resided at a certain place is a finding of a fact, and, on exceptions to the conclusion of law thereon, such fact must be taken as true. p. 105.
3. WORDS AND PHRASES.—*"Residence."*—*Taxation.*—"Residence," as used in tax laws, imports a permanent abode. p. 105.
4. PARENT AND CHILD.—*Residence.*—The residence of the parents is the residence of the child. p. 106.
5. SAME.—*Insane.*—*Residence.*—The residence of the parents is the residence of an insane daughter who has attained her majority, where she lives with them and is not under guardianship. p. 106.
6. CITIZENS.—*Residence.*—*Intention.*—To constitute a change of residence there must be an actual removal coupled with an intention to change residence. p. 106.
7. GUARDIAN AND WARD.—*Residence of Ward.*—*Intention.*—The guardian of an insane ward may control the legal residence of such ward. p. 106.
8. SAME.—*Residence of Ward.*—Where the guardian of an insane ward permitted her to be removed with her mother from

the mother's country home to a city and to remain indefinitely with such mother, the guardian having no intention for the ward to be returned to the former home, and the mother receiving pay from the ward's estate for board and care, the residence of such ward, for taxation purposes, is the place of residence of the mother.　p. 109.

From Huntington Circuit Court; *Levi Mock*, Special Judge.

Suit by Andrew G. Brookover as guardian of Mary A. Brookover, an insane person, against Henry F. Kase, as city treasurer of the City of Huntington.　From a decree for defendant, plaintiff appeals.　*Affirmed.*

*M. L. Spencer* and *Cline & Cline*, for appellant.

*C. W. Watkins* and *Bowers & Feightner*, for appellee.

HADLEY, P. J.—This is a suit brought by appellant to enjoin appellee from collecting certain city taxes assessed against the property of appellant's ward, Mary A. Brookover, in the city of Huntington.　The grounds upon which said writ of injunction was sought were that appellant's ward did not reside in said city during the years for which said assessments were made; that said property had been listed and assessed and the taxes paid thereon in Warren township, the township where it is claimed said ward resided.　Trial was had, and upon request a special finding of facts was made by the court, and a conclusion of law stated that the law was with appellee, and decree accordingly entered thereon.　Exception was taken to the conclusion of law, and the ruling of the court on such conclusion of law is assigned here as error, and is the only error presented.

The facts as stated in the finding are, in substance, that Mary A. Brookover is a person of unsound mind, fifty-eight years of age, and at no time in life has been capable of transacting business or caring for her property; that she resided in Warren township, Huntington county, Indiana, for many years prior to December, 1884, with her mother;

that in December, 1884, appellant, a resident of Warren township, was appointed guardian of said Mary Brookover. who was his sister; that he thereupon took charge of the person and property of his said ward, which property consisted of real estate in Warren township and notes and other choses in action; that said appellant, as said guardian, arranged and agreed with his ward's mother, Eliza J. Brookover, to furnish a home and care for said ward on the farm in Warren township, no definite time being fixed for the furnishing of said home and care.

Findings four, five and nine are as follows:

"(4) That said ward continued to reside and have her home with her said mother on said farm until the spring of 1886, when said Eliza J. Brookover moved to the city of Huntington, in said county, and by and with the consent of said guardian said ward went with her said mother to reside in said city of Huntington, and did so reside and make her home until the fall of 1892, when said Eliza J. Brookover moved to said Warren township, with said ward. with the consent of said guardian, and under said arrangement, and they remained until the latter part of 1893, when said Eliza J. Brookover returned to said city of Huntington to live, and by and with the consent of said guardian said ward moved with her said mother, and since which time said ward has lived and made her home with her mother within the corporation limits of said city of Huntington, by and with the agreement of said Eliza J. Brookover and said guardian that said Eliza J. Brookover should keep and furnish a home for said ward without any agreement or understanding of the length of time said ward was so to live or remain with her said mother.

(5) That when said ward moved with her said mother to said city of Huntington the second time there was no definite agreement between said guardian and said Eliza J. Brookover as to how long said ward should make her home

with her said mother, but she has so resided with her said mother with the agreement of said guardian to pay, and who has paid, said mother for the support, board and care of said ward out of said ward's estate.''

''(9) That during the years set out in finding eight, said Mary Ann Brookover resided within the corporate limits of the city of Huntington, and her said property, set out in finding eight, was subject to taxation during said years by said city of Huntington.''

Other findings are to the effect that appellant listed said property and the same was assessed in Warren township, and the state, county and township taxes paid thereon by virtue of said assessment; that appellant resided in said Warren township, and that appellee was threatening to collect the taxes, of which complaint was made.

It is conceded that this cause must be determined upon the residence of Mary A. Brookover, as the personal property of an insane person under guardianship should be assessed for taxes for city purposes in the city where the ward resides. Acts 1903, p. 49, §30, subd. 5, §8421 Burns 1905.

By finding nine it is specifically declared by the court that said ward resided in the city of Huntington during the years for which said assessments were made. This is a finding of a fact, and for the purpose of the exception to the conclusion of law must be taken as true. This then settles the question, unless from other facts specially found it appears that finding nine cannot be true.

It is contended by appellant that findings four and five show that appellant's ward did not reside in the city of Huntington, but that her residence was in Warren township. Residence, as used in our tax laws, means a permanent abode, as distinguished from a temporary sojourn. Culbertson v. Board, etc. (1876), 52 Ind. 361.

It is clear that at the time of the appointment of

appellant as guardian in 1884, his ward's residence was with her mother in Warren township, the rule of law being that the residence of the parents or surviving parent is the residence of the infant. *Warren v. Hofer* (1859), 13 Ind. 167; *Wheeler v. Burrow* (1862), 18 Ind. 14.

And this is true of a *non compos* after he attains his majority, he being in the eyes of the law the same as an infant, and not emancipated by his age. *Inhabitants of Wiscasset v. Inhabitants of Waldoborough* (1825), 3 Me. 388; *Inhabitants of Tremont v. Inhabitants of Mt. Desert* (1853), 36 Me. \*390; *Inhabitants of Upton v. Inhabitants of Northbridge* (1818), 15 Mass. 237; *Town of Orford v. Town of Rumney* (1825), 3 N. H. 331.

It is well settled that there cannot be a change of residence without the conjunction of intention to change and an actual removal. *Culbertson v. Board, etc., supra.*

It is urged that since the foregoing rule is true, and since a *non compos* is incapable of forming an intention, his residence must be determined by his residence of origin, or his residence at the time his incapacity occurred.

It is a general rule that the power of a guardian over the person of his ward is practically the same as the parent, and he may therefore control the residence of his ward to the same extent. *Townsend v. Kendall* (1860), 4 Minn. 412, 77 Am. Dec. 534; 1 Blackstone's Comm. (Lewis's ed.), \*462; 2 Kent's Comm. (12th ed. by Holmes), \*226, note c. As the father forms the intention and changes the residence for his infant child, so the guardian may form the intention and change the residence of his ward.

The right of a guardian to change the residence of his ward seems never to have been decided in this State; but both reason and authority of other states clearly sustain this right. *Kirkland v. Inhabitants of Whately* (1862), 86 Mass. 462; *Anderson v. Estate of Anderson* (1869), 42 Vt.

350, 1 Am. Rep. 334; *Marheineke* v. *Grothaus* (1882), 72 Mo. 204; *Wilkins' Guardian* (1892), 146 Pa. St. 585, 23 Atl. 325; *Holyoke* v. *Haskins* (1827), 5 Pick. (Mass.) 20, 16 Am. Dec. 372; *Ex parte Bartlett* (1857), 4 Bradf. (N. Y.) 221; *Townsend* v. *Kendall, supra.*

*Kirkland* v. *Inhabitants of Whately, supra,* is in many respects similar to the case before us. In that case the domicil of origin of the ward was in Northampton, that being also the domicil of the guardian. With consent and under arrangement of the guardian the ward was sent to Whately to the home of his grandfather, who kept him and cared for him, and was paid therefor by the guardian. The ward had real estate in Northampton, and occasionally visited there, but had no home or habitation there. This continued for a period of two years. There was no definite understanding between the guardian and the grandfather as to how long the ward should remain with him. The question, as here, was whether the ward should be taxed on his personal estate in Northampton or Whately, this question to be determined by the ward's residence. The court say: "It is admitted that for two consecutive years the minor with the consent of his guardian had lived exclusively in that town. All the outward *indicia* by which the residence of a person is determined pointed solely to Whately as the place where he resided and had his home. This, then, is one essential element of domicil. The other is the intent with which he there lived; for the fact and intent must concur, in order to establish a legal domicil. In this case, as the domicil of a minor under guardianship is at issue, the intent of the guardian is to be regarded. So far as the facts agreed indicate any intent on his part having reference to the domicil of origin of his ward at Northampton, it appears that, when he went to Whately and ever since, the guardian has had no definite intention to cause him to return to Northampton to reside. It appears, then, that the ward had for two years ceased in fact to reside at Northampton, and that when he

left there and during all the subsequent time there has been no fixed intention in the mind of the guardian that he should return thither to live. It follows necessarily that neither the fact nor the intent concurred in fixing that place as his domicil. On the contrary, the ward having ceased to live there, and his guardian having no fixed intent that he should return to that place to reside, it would seem very clear that the domicil of origin was abandoned. We know of no case, in which a domicil has been held to continue, where the fact of actual residence and intent to return are both wanting. * * * It is also equally clear that the guardian intended, so far as he had an intent on the subject, that he should there remain until he formed a definite purpose to remove him elsewhere. There was no intent definitely formed that he should return to Northampton, or go to any other place than Whately. He went to live there with an intent on the part of his guardian that he should remain until he formed an intent to remove him. The ward was then in fact living in Whately with an intent that he should remain for an indefinite period, and until a new intention existed to procure a home for him in another town. So far as any definite intent existed in regard to his domicil, it established it at Whately; all else was indefinite and unformed.''

In the case of *Anderson* v. *Estate of Anderson, supra,* it appears that appellee's decedent resided with his wife and family in Woodstock. He became insane and was taken to Brattleboro for treatment, and a guardian for his person and estate was appointed. The guardian disposed of his ward's property and removed his family to Montpelier, where they made their home. They left no interests in Woodstock. The ward died in Brattleboro, never having regained his reason. The question arose whether his residence was in Woodstock, where it was when he lost his reason, or Montpelier, where his wife and family, under the guardian's direction, had subsequently removed. The court held his residence to be

in the latter place, in the course of the opinion saying: "While he was insane he had no mind, no intent in regard to his residence, his domicil, his property or his person, and he exercised no free will as to any of these matters. The right of the guardian to change the domicil of his insane ward is founded on obvious principles of humanity and justice, and supported by authority. If the guardian could not change the domicil of an insane person, he might be required to support him and his family at a place where the price of everything necessary for their support was exorbitant and greatly exceeding the means of the family. When Holmes was appointed guardian he became substituted for his insane ward, with reference to all his interests, to act for him in the management of his property and to fix the locality of his person and determine his domicil."

We are therefore of the opinion that a guardian may change the legal residence of his ward. This being true, and the court having found from the evidence that the residence of Mary A. Brookover had been changed from Warren township to the city of Huntington, and that she, in fact, resided there during the years stated, on an exception to a conclusion of law this court cannot say that finding nine cannot be correct. Said finding therefore being a valid finding, the conclusion of law is correct.

Judgment affirmed.