## SEAWARD v. CARMAN.

**Wills: PROBATE: CONTEST: EVIDENCE TO SUPPORT VERDICT.** In a contested proceeding to probate a will, when the evidence is conflicting, and the trial court refuses to set aside the verdict on the ground that it is not supported by the evidence, this court cannot interfere.

*Appeal from Jackson District Court.*—HON. W. F. BRANNAN, Judge.

FILED, OCTOBER 29, 1889.

WHAT purported to be the last will and testament of Juliet Carman was made and executed on the twenty-fifth day of April, 1887, and she died on the fifteenth day of June in the same year. The will was presented for probate by her daughter, Maria J. Seaward. Charles P. Carman, a son of the deceased, contested the will upon the grounds that it was procured to be executed by undue influence, and that at the date of the instrument said Juliet Carman was incapable of making a valid will by reason of the impaired and unsound condition of her mind. There was a trial by jury, which resulted in a verdict for the contestant. Maria J. Seaward, the proponent, appeals.

*Ellis & McCoy* and *G. L. Johnson*, for appellant.

*W. G. Thompson*, *D. A. Wynkoop* and *Murray & Farr*, for appellee.

ROTHROCK, J.—I. It appears from the record that the cause was twice tried to a jury in the district court. In the first trial the jury failed to agree, and in the last the instrument in question was adjudged not to be the last will and testament of the deceased. The record, as presented in this court, is very voluminous. The appellant's abstract consists of more than two hundred

and fifty pages of closely printed matter. In the trial of the case nearly all of the evidence introduced by the contestant was objected to by the proponent. Indeed, exceptions were taken to nearly all the rulings of the court, and about the only thing which was conceded by proponent was the fact that the court was in session, and engaged in the trial of the cause. Objections and exceptions were also taken to the instructions given by the court to the jury. If we were to undertake to review and discuss all of the questions made by counsel for appellant, it would require more time and labor than we think necessary to properly dispose of the appeal, and we deem it sufficient to say of the instructions given by the court to the jury that they are in full accord with the decisions of this court in a long line of cases, from the case of *Bates v. Bates*, 27 Iowa, 110, to the case of *Stephenson v. Stephenson*, 62 Iowa, 163. All of these cases will be found collected in 2 McClain's Iowa Digest, 664, *et seq.*, and every question made upon rulings upon the admission and exclusion will also be found to be settled by the cited cases. The evidence proper to be considered as showing undue influence and want of mental capacity has been so repeatedly and fully considered by this court that we deem it unnecessary to repeat what has so often been determined. With all due respect to the learned counsel for appellant, it is not too much to say that the objections to the rulings of the court upon the evidence and instructions may justly be termed hypercritical. They are evidently born of a conviction in the minds of counsel that the evidence is in sufficient to support the verdict, and that this court should seek some ground in the rulings of the court upon which the case may be reversed, without entering upon the only real ground for debate presented in the record.

II. In addition to the printed arguments, the case was argued orally by counsel for the respective parties, and the question of the sufficiency of the evidence was quite fully discussed. We have given careful attention to this feature of the case, as it is the only real question

presented by the record. It is not our purpose to set out the evidence, or enter upon a discussion of the facts in detail. It appears from the evidence that the deceased was about seventy-three years of age at the time she executed the instrument claimed to be her last will and testament. She had for many years owned a farm, valued at about ten thousand dollars, and at the time of her death she had about forty-five hundred dollars in money and personal effects. She was a widow, her husband having died some three years before the will was made. The proponent, Maria J. Seaward, and the contestant, Charles P. Carman, are her only living children and heirs. Without a will, each would have been entitled to an undivided half of the estate. Both of the heirs are married. Mrs. Seaward is the mother of children, and the contestant has no children living. By the will in question, after making two devises of fifty dollars each to other parties, the undivided half of her estate is bequeathed to her daughter absolutely, and the rents, profits and use of the other undivided half is given to her son during his life, with the provision that at his death the said half is to become the sole and absolute property of her daughter and her heirs. As is usual in such cases, the evidence took a very wide range. A large number of the personal acquaintances and friends of the deceased were examined as witnesses, and the acts and conversation of the deceased were detailed to the jury. Some of the witnesses were of opinion that her mind was unsound, and they gave the facts upon which they based their belief. Others saw nothing in her walk and conversation to denote mental unsoundness. The medical experts were examined, and their opinions taken upon hypothetical questions, based upon the evidence, and their opinions as to her mental capacity differed widely. All the evidence was submitted to the jury, and, after proper deliberation, they found for the contestant. This finding received the sanction of the learned district judge who presided at the trial, and heard and saw the witnesses, and we do not think the case presents that

want of support in the evidence which requires this court to interfere. It is true, the jury may have been influenced to some extent by the idea that an equal division of the property between the parties was fair and equitable, and there is much ground for entertaining that belief; but, aside from that consideration, and independent of it, in view of the conflict in the evidence, it appears to us to be our duty to sustain the verdict.                    AFFIRMED.