M. L. BROWN, Guardian, Etc., AND SARAH BRAITHWAITE AND
    JOHN H. HAAS, Administrators, Etc., Appellees, v. J.
    B. LAMBE, Treasurer, Etc., AND PALO ALTO COUNTY,
    Appellants.

Action to Restrain Collection of Tax of Insane Person:    APPOINT-
    MENT OF GUARDIAN NOT CONCLUSIVE OF LEGAL RESIDENCE:    ES-
    TOPPEL.   In an action by the guardian of an insane person to
    restrain the collection of personal taxes imposed on the prop-
    erty of his ward, the fact that the ward has been adjudged in-
    sane by the courts of this state in a guardianship proceeding,
    or that the commissioners of insanity on investigation com-
    mitted such person to the insane asylum, are not conclusive of
    the ward's legal residence, but in defense to the right of the
    County to assess and collect the tax, the guardian may show
    that the ward is a resident of another state; nor is the guar-
    dian estopped to make such defense on the ground of good
    faith to the court.

*Appeal from Palo Alto District Court.*—HON. A. D. BAILIE,
                          Judge.

                MONDAY, FEBRUARY 2, 1903.

    ACTION in equity to restrain the defendant Lambe,
who is treasurer of Palo Alto county, from proceeding to
enforce the collection of certain taxes.   An answer was
filed, consisting of three divisions, to the second and third
of which a demurrer was interposed and sustained.   From
the ruling thereon, the defendants appeal.—*Reversed in
part and affirmed in part.*

    *E. A. Morling* and *F. C. Davidson* for appellants.

    *Soper, Allen & Alexander* and *W. H. Wilson* for
appellees.

    BISHOP, C. J.—It is conceded that the questions raised
by the second division of the answer, and the demurrer

thereto, are fully determined adversely to the ruling upon the demurrer by our holding in the recent cases of *Galusha v. Wendt*, 114 Iowa, 597, and *Bell v. Stevens*, 116 Iowa, 451. It follows that as to such division of the answer the ruling of the court below upon the demurrer must be reversed.

II.   The allegations of the petition, as far as material to an understanding of the matters alleged in the third division of the answer, are that plaintiff Brown is the guardian of the property of one Titterington, an insane person; that, as alleged, said Titterington has never been a resident or citizen of the State of Iowa, but at all times has been a resident and citizen of the state of Illinois; that in August, 1900, the defendant Lambe, treasurer of said county, acting upon information furnished by tax ferrets, so called, proceeded to, and did, assess and levy taxes upon a large amount of personal property said to be owned by said Titterington, and withheld from assessment and taxation, for the years 1896 and 1897, and interest, as provided by law.   It is further alleged that said Titterington was an unmarried man, that he owned real estate in Palo Alto county, and that he spent much of his time with a tenant named Moore on his farm in said county.   The personal property alleged to be owned by Titterington consisted principally of moneys and credits represented by loans made to various residents of this and other states.   It is the contention of appellee that the action of the treasurer was illegal and void, in that the personal property owned by Titterington could be taxed only in Illinois, the state of his legal residence.   In a former division of the answer the allegation is made that for more than five years said Titterington has been a resident and citizen of Palo Alto county, and facts are pleaded from which such conclusion might be drawn.

Having said this much for a better understanding of the issue tendered, we now take up the third division of the answer.   It is therein alleged that in March, 1897,

Moore, the tenant of Titterington, filed an application in the district court in and for said county, setting forth that Titterington had made his home with applicant; alleging the residence of said Titterington to be in said county, and that the same had so been for more than five years; that said Titterington was of unsound mind; that he held property in said county,—and praying the appointment of a guardian to take charge of such property. It is alleged that thereupon such proceedings were had that a guardian *ad litem* was appointed, who filed answer and made defense; that, after a hearing upon the issues joined, it was expressly found by the court that said Titterington was a resident of Palo Alto county, and had, been for several years and on which finding plaintiff Brown was appointed guardian of his person and estate; and defendants aver that the foregoing proceedings constitute the title of said plaintiff to his office as guardian, and his right to the estate of his ward. Further, in the same division, the defendants aver that in 1898, in proceedings duly had before the board of commissioners of insanity in and for said county, it was found that said Titterington was a resident and had a settlement in said county, that he was insane, and thereupon he was committed to the state hospital for the insane, where he is still confined. The demurrer filed to said division of the answer is as follows: That the facts stated do not constitute a defense to plaintiff's cause of action; that the same neither constitutes a bar to the cause of action, nor an estoppel as against plaintiff.

If it shall be said that the matters pleaded in the answer are available in a defensive way, it must be for the reason that the findings of the district court in the guardianship proceedings, and of the board of insane commissioners,—one or both,—as to the place of residence of Titterington, are conclusive, and that plaintiff, as his guardian, is estopped from now asserting or making proof to the contrary. It is sometimes said that estoppels are

not favored in law, but it remains true that the doctrine
is a very salutary one as applied to many cases that come
before the courts for determination.    It is bottomed upon
the thought that one should not be permitted to deny, to
the legal prejudice of others, that which he has at some
time before solemnly asserted to be the truth.    As applied
to legal proceedings,—that is, proceedings in court,—the
doctrine operates in general to forbid one of the parties
from gaining an advantage by shifting to a position incon-
sistent with that theretofore occupied by him.    And this
is true not only where the rights of others are concerned,
but it may have application as well where good faith and
fairness to the court are involved.    Accordingly it is said
that a party to an action is bound by the averments of his
pleadings therein, and he is bound by a ruling or judgment
of the court which he obtains upon his own motion, save
that he may attack the same by direct application; the
prayer being for a modification or to set the same aside.
2 Herman, Estoppel, section 823.

   And it is said that a party may not obtain relief, in a
proceeding instituted in court by him, on one basis, and
then seek a new chance to litigate the same subject-matter
upon a theory contrary to that relied upon by him in the
first proceeding.    *Sweezey v.    Stetson*, 67 Iowa, 481;
*Belanger v. Hersey*, 90 Ill. 73.    So, too, it has been held
repeatedly that one may not relieve himself from the
natural and ordinary consequences where he has invoked
the jurisdiction of a court, as having reference to his lia-
bility upon a bond given, etc.    Thus where one procures
a writ of attachment to issue from the court of a justice of
the peace, and gives bond therefor as provided by law, he
cannot thereafter be heard to deny his liability upon such
bond on the ground that the court, while having jurisdic-
tion of the subject-matter of the action, had no jurisdiction
of the parties, on the ground of kinship to the party plain-
tiff.    *Harbaugh v. Albertson,* 102 Ind. 69 (1 N. E. Rep. 298.)

And in an action brought upon a guardian's bond, one who has procured himself to be appointed as such guardian is estopped from claiming that the minors resided out of the jurisdiction of the court making the appointment, and that therefore such appointment was void. *Hines v. Mullins*, 25 Ga. 696. ·

It is to be observed that another principle involved in the doctrine we are considering, and it is fundamental, is that judgments *in personam* conclude only the immediate parties and their privies. The bar must be mutual to the parties in the later action. Bigelow, Estoppel, p. 114, and cases cited in the note.

Counsel for appellant make the contention that proceedings for the appointment of a guardian of a person of unsound mind are *in rem*, and not *in personam*. In this we do not agree. We have repeatedly held to the contrary. *Gregg v. Myatt*, 78 Iowa, 703, and cases cited. Moreover, the provisions of the statute authorizing the appointment of a guardain make certain the adversary character of the proceedings. The steps required to be taken are those provided for the commencement of an ordinary action. The petitioner is plaintiff, and the person against whom the proceeding is instituted is defendant. A jury trial may be had, and an appeal is authorized. Code, section 3219 *et seq.*

But were this not so, we think it must be said that appellants in this action are in no position to invoke on their own behalf the doctrine of estoppel. They have not been in any wise misled to their prejudice by reason of the allegation contained in the petition for the appointment of a guardian. The attitude of the county is simply that, if Titterington was a resident and citizen of the county, it is entitled to collect the tax in question. If he was not such resident and citizen, it is in effect conceded that the assessment was unauthorized, and payment of the tax ought not to be enforced. It follows that appellants are

in no position to complain on the ground that they have
acted on the faith of the averment of the petition for a
guardian to their legal prejudice. No change of position,
within the meaning of the rule, had been induced. The
most that can be said is that the county treasurer has con-
ceived that an amount of taxes upon withheld property
was due to the county, and he has taken steps in the way
of an effort to collect the same. There is nothing in such
facts that can be relied upon as giving rise to legal preju-
dice, thus calling for the application of the doctrine of
estoppel. Appellants are left free to make such proof on
the question of residence as may be within their power,
and, if their contention on that subject is well founded in
fact, there is no bar in the way of a complete recovery.
If the fact be otherwise, then there is no legal right to
the amount of tax assessed, and there is no basis for say-
ing that a wrong will be inflicted upon the county if a
recovery of such tax shall be refused. This, of course,
upon the theory that the question of domicile is an open
one; that the averment of the petition for appointment of
a guardian, and the finding and order based thereon,
do not operate to bar any further investigation into the
subject.

We think the question narrows down to the single in-
quiry as to the propriety of permitting a guardian to assert,
under the conditions appearing in this action, the fact of
nonresidence on the part of his ward, and this in the sense
only as involving that element of good faith and consistent
conduct which is due to the court at the hands of one
holding an appointment under its order. It is manifest
that here the principles upon which the doctrine of
estoppel in general is based can have no application. Now,
section 3219 of the Code provides, in substance, that a
guardian may be appointed when a petition is presented
that any inhabitant of the county is of unsound mind, etc.
Conceding, as contended for by appellants, that the word

"inhabitant," in its general acceptation, is synonymous with "domicile" or "legal residence," and that in the construction of statutes words are to be given their ordinary meaning, it is nevertheless true that the object and purpose of the statute are to be inquired into, and the effect thereof considered, in arriving at the true meaning of the language used. *State v. Botkin,* 71 Iowa, 87; *Tully v. Beaubien,* 10 Iowa, 187. And the real intent of the statute, if it can with certainty be ascertained, will prevail over the literal sense of the words used. *Williams v. Poor,* 65 Iowa, 410.

We are unable to agree with counsel that jurisdiction in guardianship cases is made to depend upon a strict construction of the word "inhabitant," as found in the statute. We think it was meant to provide a means whereby the property of persons of unsound mind, living or being at the time within this state, might be preserved and cared for. No other purpose or intent is to be gathered from the statute. Now, it may frequently happen that a person having his legal residence in a sister state has for a more or less extended period before becoming mentally deranged, actually lived in this state, and that much or possibly all his effects are in this state. It is not within reason to say that in his interest and for his benefit the courts are powerless to provide for the care and protection of his property. And it would be absurd to say that if, upon proceedings being brought for the appointment of a guardian, proof of the legal domicile or residence shall not be accessible, the proceedings must abate, and the property of the unfortunate be cast out, to find its way into such hands as may be in waiting to seize and make disposition of it. So too, it must be taken into account that very important property rights may depend upon the fact of legal residence. It is not difficult to conceive that rights of homestead, of qualified life estate, and perhaps of conditional gifts and bequests, etc., may be made to thus depend. To say that it was

intended that the appointment of a guardian should have
effect to thus deprive the helpless subject of such proceed-
ings of his property rights would be to announce a rule at
once intolerable and unjust.    On the contrary, as we·
think, the object of the statute was to benefit, not to de-
spoil, the unfortunate.

But this is not all.    It must be borne in mind that the
guardianship proceedings are instituted by a legal stranger,.
and the guardian appointed is a legal stranger.    Neither
have any personal interest at stake.    The sole person inter-·
ested is or may be unconscious of all that is taking
place.    Not only is the situation such as that the doctrine
of estoppel has no place, but no good reason appears why
it may not be subsequently shown, in the interests of the·
ward, in equity, at least, that the fact of residence is other-·
wise than as asserted in the petition for the appointment·
of guardian.    To so hold in no sense conflicts with the rule
announced in the cases cited and referred to in a foregoing.
paragraph of this opinion.    No wrong is done to any party
because the truth is still open to ascertainment, and no·
bar is put up to prevent the establishment of legal rights.
What we have already said has application with double·
force to the proceedings before the insane commission.
Such proceedings are wholy *ex parte*, and have for their·
sole object the personal restraint and care of the insane·
afflicted.    The board is not required to make a finding
upon the question of legal residence, and even should it do·
so, its finding would not be conclusive.    Code, section 2270.

We conclude that the right to plead and prove the·
truth as to the residence of Titterington in this action is
not cut off by reason of the averment and finding in the
guardianship proceeding.    It follows that there was no·
error in sustaining the demurrer to the third division of
the answer.    It is made to appear that since the submis-
sion of this cause the said Titterington has died, and Sarah
Braithwaite and J. H. Haas have been duly appointed and.

qualified as the administrators of his estate.  It is also made to appear that appellee Brown has made full report and settlement in respect of his doings as guardian.  The motion of appellee that the said administrators be substi-tuted as appellees in place of said Brown, and that the latter be discharged as the party plaintiff and appellee, is sustained.—REVERSED in part and AFFIRMED in part; each of the parties to pay one-half the costs in this court.